IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LEROY SUMLIN,

   Plaintiff,

    v.

WARDEN JOHN GIBSON, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:06-CV-2333-TWT

ORDER AND OPINION

This is a pro se civil rights action. It is before the Court on the Defendants' Motion for Summary Judgment [Doc. 46]. For the reasons set forth below, the motion is GRANTED.

I. Background

The Plaintiff is a prisoner at the Fulton County Jail, and has been since at least 2004. The Plaintiff filed his Complaint in September 2006 claiming he was denied proper medical treatment. The Plaintiff sued the following Defendants: John Gibson, Warden of Fulton County Jail; Sheriff Freeman; Fulton County Board of Commissioners; Correctional Medical Associates, Inc. ("CMA"); and the State of

Georgia.[1] Fulton County contracted out to CMA all aspects of medical care at the jail. The Fulton County Jail relied solely on CMA to "diagnose, treat and notify Jail personnel . . . as to whether an inmate has medical problems requiring some action [by Jail officials]." (Herron Aff. ¶ 6).

At the outset, it should be noted that the Plaintiff has a litany of serious medical conditions, in spite of his general optimism regarding his health: "There was nothing wrong with me except for HIV when I [was] booked in here and high blood pressure, and [an] irregular heart beat." (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., at 7). The following facts have emerged as relevant after the parties' briefing. The Plaintiff alleges that, beginning around June 2006, he began experiencing serious health issues with his digestive tract. (Comp. § IV). According to the Plaintiff's complaint, he initially complained of diarrhea. Shortly thereafter, the Plaintiff alleges that he began finding blood in his stool. (Id.) According to the Plaintiff's medical records, the Plaintiff was complaining about both of these conditions as early as May 2006. (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., Ex. 1).

On October 27, 2006, medical staff at Grady Hospital ("Grady") evaluated the Plaintiff and determined that he was suffering from chronic rectal bleeding. (Defs.'

---

[1]The Plaintiff did not sue CMA but rather the "Medical Director of Fulton County Jail." This Court construed that party to be CMA, and previously granted CMA's motion to dismiss [Doc. 38]. The State of Georgia has also been previously dismissed. [Doc. 22].

Statement of Material Facts ¶ 18).  As early as October 31, 2006, the staff at Grady determined that a colonoscopy for the Plaintiff should be arranged.  As early as October 27, 2006, the Plaintiff's attending physician at the Fulton County Jail noted that the Plaintiff may have needed a colonoscopy.  On November 7, 2006, CMA staff made a notation that acknowledged the Plaintiff was awaiting a colonoscopy.  On November 11, 2006, the CMA staff again noted that the Plaintiff "needs colonoscopy."  Despite various forms of treatment both at the jail and at Grady, the Plaintiff continued to experience similar problems.  In March 2007, staff at Grady noted that the Plaintiff still needed an appointment for a colonoscopy.  Although the Plaintiff claims in his Response Brief that he was scheduled to have a colonoscopy at Grady in September 2007, the record is unclear as to whether he actually ever had one.

During the time the Plaintiff has been complaining of his digestive problems, it is clear from the record that the Plaintiff has received a great deal of medical care. The Plaintiff acknowledges that he has been taken to Grady "several times" since he began complaining of his digestive problems.  (Pl.'s Br. in Opp'n to Defs.' Mot for Summ. J., at 1).  It is also evident from his voluminous medical records that he received medical attention from the CMA staff frequently.  Nevertheless, the Plaintiff alleges that the Defendants prevented him from receiving a colonoscopy, constituting

deliberate indifference to his health in violation of the Eighth Amendment. The Defendants now move for summary judgment.

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. Discussion

The Defendants seek summary judgment on the claims that Plaintiff has asserted against them pursuant to 42 U.S.C. § 1983. Section 1983 provides a private cause of action for persons whose rights under the federal constitution have been violated under color of state law. 42 U.S.C. § 1983. The statute confers no substantive rights itself. Instead, it provides "a method of vindicating federal rights

elsewhere conferred." Graham v. Connor, 490 U.S. 386, 394 (1989).  To establish a section 1983 violation, Plaintiff must show (1) conduct committed by a person acting under color of state law (2) that deprived him of rights, privileges or immunities secured by the Constitution or laws of the United States.  Parratt v. Taylor, 451 U.S. 527, 535 (1981); Duke v. Massey, 87 F.3d 1226, 1231 (11th Cir.  1996).

The Plaintiff alleges that the Defendants violated his right to be free of "cruel and unusual punishment" as protected by the Eighth Amendment to the Constitution of the United States.[2]  For the Plaintiff to withstand the Defendants' Motion for Summary Judgment on the section 1983 claims, he must allege acts or omissions showing that the Defendants acted with "deliberate indifference" to his medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976).  The meaning of the term "deliberate indifference" was further clarified by the Supreme Court in Farmer v. Brennan, 511 U.S. 825, 837 (1994), a case that considered its meaning with reference to a prison's duty to protect its inmates from violence at the hands of other inmates. In Farmer, the Court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or

---

[2]The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII. It applies to the states and their political subdivisions through the Fourteenth Amendment.  Robinson v. California, 370 U.S. 660, 667 (1962).

>  safety; the official must both be aware of facts from which the inference
>  could be drawn that a substantial risk of serious harm exists, and he must
>  also draw the inference.

Id. at 837. However, "an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that a harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842.

> Whether a prison official had the requisite knowledge of a substantial
> risk is a question of fact subject to demonstration in the usual ways,
> including inference from circumstantial evidence ... and a factfinder may
> conclude that a prison official knew of a substantial risk from the very
> fact that the risk was obvious.

Id.

Accordingly, under Estelle and Farmer, deliberate indifference has three elements: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than mere negligence. See also Farrow v. West, 320 F.3d 1235, 1245-46 (11th Cir. 2003). Summary judgment must be granted for the defendant official unless the plaintiff presents evidence of the official's subjective knowledge. "[S]ince a finding of deliberate indifference requires a finding of the defendant's subjective awareness of the relevant risk, a genuine issue of material fact exists only if the record contains evidence, albeit circumstantial, of such subjective awareness." Campbell v. Sikes, 169 F.3d 1353, 1364 (11th Cir. 1999) (quoting Steele v. Shah, 87

F.3d 1266, 1269 (11th Cir. 1996)(citations omitted)); McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). In addition to the subjective awareness of the relevant risk, Estelle requires that plaintiff show more than mere negligence to establish a violation of the Eighth Amendment and defeat a prison official's motion for summary judgment.

The Eleventh Circuit's cases have given substance to Estelle's distinction between "deliberate indifference" and mere negligence. The Eleventh Circuit has repeatedly held that "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 (11th Cir. 1997); see also Mandel v. Doe, 888 F.2d 783, 788 (11th Cir. 1989) (noting that "knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference"). Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable. Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir. 1994); Brown v. Hughes, 894 F.2d 1533, 1537-39 (11th Cir. 1990). The Eleventh Circuit also has held that deliberate indifference may be established by

a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment.  Steele v. Shah, 87 F.3d 1266, 1269-70 (11th Cir. 1996); Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989).  Moreover, "[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference."  Mandel, 888 F.2d at 789; accord Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985).

The Defendants argue that summary judgment is appropriate because "Plaintiff's allegations concern matters that are within the sole authority and purview of CMA."  (Defs.' Mot. for Summ. J., at 11).  Because the Fulton County Jail relied on the contracted medical provider, the Defendants argue, they never had a duty or responsibility to see that the Plaintiff's medical care was handled appropriately. However, the government's duty to ensure that a prisoner receives appropriate medical care is non-delegable.  Ancata, 769 F.2d at 705.  Liability may still attach for non-medical defendants even though § 1983 does not allow claims based on respondeat superior.  Id.  For instance, a governmental body could be liable in the event that it or the private health care provider (because it operates under color of state law) adopted a policy or custom of improper treatment of prisoners.  Id. at 705 n.8; see also Buckner v. Toro, 116 F.3d 450, 453 (11th Cir. 1997) (affirming that the "Monell policy or custom requirement applies in suits against private entities

performing functions traditionally within the exclusive prerogative of the state, such as the provision of medical care to inmates."). Additionally, government defendants could be liable if the private health care provider makes final decisions regarding medical treatment. Ancata, at 705 n.9. At that point, "their acts, policies and customs become official policy." Id. Liability against individual defendants can be established if the defendant "was personally involved in the acts depriving [a plaintiff] of his constitutional rights, or that he breached a duty imposed by state law and that that breach caused the plaintiff's injury." Id. at 706.

"Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006). Even applying this lax standard, the Plaintiff has not shown that any of the Defendants named in this action have been grossly indifferent to his serious medical needs. As noted in the previous Order to Dismiss CMA [Doc. 38], the Plaintiff did not present evidence of a custom or policy by CMA of providing improper treatment. Further, the Plaintiff has not alleged that the remaining non-medical Defendants adopted a custom or policy to provide improper treatment. Therefore, the Board of Commissioners in their official capacities are not liable to Plaintiff. Although the non-medical Defendants gave CMA much discretion in the treatment of prisoners, they did not cede the final authority over health care to CMA.

The non-medical Defendants established a grievance procedure for inmates to protest a course of treatment. The Plaintiff was aware of the grievance procedure, having filed two previously. (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., at 5). However, the Plaintiff chose not to file a grievance regarding his desire for a colonoscopy. Because the government Defendants did not delegate their final authority, and because the Plaintiff did not notify the government Defendants via the grievance procedure, CMA's actions cannot be said to represent official policy. Liability cannot be premised on the conduct of CMA alone. See Ancata, 769 F.2d at 705 n.9.

In his Response Brief to this Motion, the Plaintiff, in so many words, accuses the non-medical Defendants of developing a custom to deny treatment in circumstances similar to his own. "Dr. McFarland went on to say it was the officers here that were refusing to, take me to the Hospital because the, seriousness of my charges." (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., at 2). Double hearsay in the form of stray remarks by a doctor or a guard does not establish notice or approval of improper medical care by decision-making authorities. A grievance procedure was in place to notify the prison officials of any insufficient treatment. Again, the Plaintiff chose to not file a formal grievance about his colonoscopy. Had the Plaintiff been able to show that these Defendants dismissed a grievance for proper care, he might have established "a longstanding and widespread practice [deemed] authorized by the

policymaking officials because they must have known about it but failed to stop it." Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991).  Moreover, this Court is permitted to consider the failure of a prisoner to pursue internal prison procedures:

> That prison officials' current attitudes and conduct must be assessed in an action for injunctive relief does not mean, of course, that inmates are free to bypass adequate internal prison procedures and bring their health and safety concerns directly to the court.  An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity, and any litigant making such an appeal must show that the intervention of equity is required.  When a prison inmate seeks injunctive relief, a court need not ignore the inmate's failure to take advantage of adequate prison procedures, and an inmate who needlessly bypasses such procedures may properly be compelled to pursue them.

Farmer, 511 U.S. at 847 (citations omitted).  Considering the dearth of competent evidence of custom and the Plaintiff's failure to pursue internal remedies, it would be improper to allow the Plaintiff's claim to proceed past summary judgment.

The Plaintiff has not alleged any direct participation or personal involvement on behalf of the individual Defendants in the decisions about his medical care.  Nor has the Plaintiff alleged that any individual Defendant breached a duty imposed by state law, and that breach caused his injury.  The Plaintiff has only alleged that "Sheriff, Myron Freeman, is the boss of all Sheriff Deputies here at the Fulton Co. Jail, so therefore whatever wrongdoing is done by those Sheriff Deputies, he the

Sheriff, Myron Freeman is held responsible. . . ." (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., at 6). The Plaintiff's only basis for liability on any individual Defendant is premised on respondeat superior. Liability based on respondeat superior is not allowed in § 1983 cases. As a result, summary judgment must be granted in favor of the individual Defendants.

## IV. Conclusion

For the reasons set forth above, the Defendants' Motion for Summary Judgment [Doc. 46] is GRANTED.

SO ORDERED, this 10 day of January, 2008.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge